LEONARD *v.* TAYLOR.

Opinion delivered June 1, 1931.

*Hal L. Norwood,* Attorney General, and *Walter L. Pope,* Assistant, for appellant.

*Sam Rorex* and *Nat R. Hughes,* for appellee.

BUTLER, J. On November 17, 1930, the American Exchange Trust Company, being insolvent, closed its doors.

At that time, and for a considerable period previous thereto, it held a note for $10,000 executed in its favor by J. E. Shroll and Ben C. McFerrin, evidencing a loan of $10,000 in money, which had been made to Shroll to aid in the construction of bridges in Newton County, Arkansas, in road improvement No. 6. This improvement was begun prior to the passage of the Harrelson Road Law, act No. 5 of the acts of the General Assembly of 1923. In aid of the construction, Newton County undertook to pay for the construction of certain bridges, the builder of which was J. E. Shroll, and issued its warrants in the sum of $25,545.55, delivering the same to the said Shroll on completion of the bridges. These warrants, at the time of the execution of the note, were delivered to the American Exchange Trust Company as collateral security for the payment of the note aforesaid, and before November 17, 1930. Under authority of the Harrelson Road Law, the State Highway Commission took over and undertook to complete improvement No. 6, incorporating the same in its highway No........., and said improvement No. 6 delivered to the commission the cash on hand, amounting to the sum of $38,600, which was paid into the State Treasury to the credit of the said commission.

It was claimed that, under the terms of act No. 153 of the Acts of 1929, as construed in the case of *Grabiel* v. *Blackwood,* 180 Ark. 311, 22 S. W. (2d) 41, the State was obligated to pay the outstanding indebtedness of improvement No. 6, including the amount represented by the scrip aforesaid, and Shroll made application to the State Highway Commission for the payment of the amount represented by said warrants. Action by the commission was not taken on said claim until February 18, 1931, at which time the claim was approved and ordered paid by voucher, directing the Auditor of State to issue his warrant to the American Exchange Trust Company and J. E. Shroll for the sum of $25,545.55, the amount of said Newton County warrants, on condition that the said

warrants be surrendered to the Highway Commission. As has been noted, between the time of the application to the commission for the payment of the warrants and the favorable approval thereof by the commission in February, 1931, the American Exchange Trust Company closed its doors, and at that time and now is indebted to the State of Arkansas for sums the latter had on deposit in said bank amounting to more than $600,000. This was secured by a bond executed by the Home Accident Insurance Company, an insolvent corporation, the assets of which are insufficient to pay a large portion of the deposit, and there will be left an amount greatly in excess of $10,-000 unsecured. Upon presentation by McFerrin, the representative of the American Exchange Trust Company, of the warrant of the Auditor of State, the State Treasurer refused to pay to the bank the amount represented by the note with accrued interest, but offered to credit the same on the State's claim for the amount owing to it by said bank.

These are the facts out of which this lawsuit arose, and the question presented for our determination is whether or not the State has a right to offset the demand of the American Exchange Trust Company out of its deposits in said bank. Counsel for the American Exchange Trust Company argue that there was no valid claim against the State until the highway commission ascertained whether the claim was valid, and the amount thereof, and, as the commission did not do so until February 18, 1931, after the Exchange Trust Company became insolvent, such claim could not be used as an offset under the rule announced in *Sloss* v. *Taylor*, 182 Ark. 1031, 34 S. W. (2d) 231. In this contention we are of the opinion that the appellee is mistaken. If the indebtedness evidenced by the Newton County warrants was such as to come within the purview of act No. 153 of the Acts of 1929, the obligation of the State attached on the passage of said act and not on the date when the commission became satisfied of its authenticity and validity. There-

fore, the only question was whether or not the American Exchange Trust Company was the owner of this obligation before it closed its doors. If it was such owner, the State was indebted to it for the same, and it was indebted to the State for the amount of the State's deposit, and there would be mutual claims entitling the State to set-off its deposit against the same.

The effect of our decisions is that the holder of the pledge has a special ownership therein to the extent of the debt secured thereby and may proceed to enforce it if it be a chose in action, a negotiable instrument, or any of a like nature. *Turner* v. *Stroud,* 37 Ark. 556; *Barnes* v. *Bradley,* 56 Ark. 98, 19 S. W. 235; *Plunkett* v. *State National Bank,* 90 Ark. 86, 117 S. W. 1079, which decisions are in line with the general rule cited by appellant from 21 R. C. L. 660-666. Therefore, when Shroll delivered the Newton County warrants to the American Exchange Trust Company, he transferred all the right he had therein to the pledgee, the effect of which act was to transfer the State's obligation directly to the pledgee, and from that time the State became indebted to the American Exchange Trust Company, regardless of when, or by whom, demand was made for the payment thereof. The fact that Shroll filed the claim with the commission in October, 1930, would be immaterial, for it is apparent that the American Exchange Trust Company's rights were recognized as the voucher was ordered drawn so that those rights would be protected and the condition made that the scrip in its hands be delivered to the commission. As is pointed out in *Burton* v. *Blytheville Realty Co.,* 108 Ark. 411, 158 S. W. 131, the statute on setoff does not define it nor undertake to limit the right to pleading except in the particular named in the statute, § 1197, Crawford & Moses' Dig., and the courts in applying this statute have liberally construed it so as to arrive at a true balance where mutual demands exist. *Funk & Son* v. *Young,* 138 Ark. 38, 210 S. W. 143.

It follows that the judgment of the trial court will be reversed, and the cause remanded with directions to allow the offset as pleaded by the State.