Antonio R. Hernández, como Síndico del Banco Industrial de Puerto Rico, demandante y apelado, *v.* Jaime Ballester, José D. Rodríguez y F. Cabán, demandados y apelantes.

No. 6221.—*Sometido:* Noviembre 5, 1935. *Resuelto:* Mayo 5, 1936.

*José D. Rodríguez,* por su propio derecho y además como abogado del apelante Sr. Ballester; *C. Santana Becerra,* abogado del apelado.

El Juez Asociado Señor Wolf, emitió la opinión del tribunal.

Antonio R. Hernández, como Síndico del Banco Industrial de Puerto Rico, designado el 31 de julio de 1930, inició este pleito contra Jaime Ballester, José D. Rodríguez y F. Cabán para recobrar la suma de $745.87, adeudádale por éstos como firmantes de un pagaré. No se niega la existencia de la deuda pero los demandados Ballester y Rodríguez alegaron el beneficio de una compensación. La Corte de Distrito de San Juan fué del criterio de que como los derechos

de compensación, de existir, fueron adquiridos después de iniciada la sindicatura, los demandados no podían con éxito confiar en su reclamación.

 Es jurisprudencia ya establecida en los Estados Unidos continentales, que cuando un banco está en estado de insolvencia, las acreencias adquiridas posteriormente no pueden ser compensadas por los deudores del banco. *Stone* v. *Dodge,* (Michigan) 21 L.R.A. 280; Michie, "Banks and Banking," Vol. 5, párr. 163; p. 314; *Ellerbe* v. *Studebaker Corporation,* 21 F. (2d) 993; *Oates* v. *Smith,* 57 So. 438.

En el caso de Ellerbe, la corte dijo a la página 997:

"La regla de que los derechos de las partes quedan establecidos cuando el banco cierra sus puertas significa que el deudor del banco no puede solicitar se le compense un crédito adquirido después de la insolvencia contra una deuda contraída antes."

El caso de Oates contiene abundante autoridad para sostener la proposición que enuncia. En la página 440 hallamos lo siguiente:

"Mas se ha resuelto con igual unanimidad que tales deudores no tienen derecho a que se les compense contra sus deudas los créditos por ellos adquiridos con posterioridad a tal insolvencia, de la que tienen conocimiento, o con posterioridad al nombramiento del síndico . . . (aquí se hace la cita de una larga lista de casos)."

Ha quedado igualmente bien establecido que la designación de un síndico equivale a la declaración de insolvencia.

No hemos podido determinar el origen exacto de la regla, mas de la lectura que hemos hecho se desprende que la idea de las cortes de equidad es que un acreedor no tiene derecho a preferencia sobre otro cuando el activo de un banco o de otra corporación va a ser liquidado. En otras palabras, un acreedor no puede mejorar su posición vendiendo su crédito contra el banco a una persona que tenga una deuda con éste, y que en su lugar podría tratar, como sucede aquí, de alegar una compensación.

El presente es un litigio iniciado por un síndico designado a tenor de los principios de equidad, conforme se provee en el inciso 5 del artículo 182 del Código de Enjuiciamiento Civil (Leyes de 1904), y no vemos razón alguna para no aplicar los mismos principios de equidad que en el continente prevalecen, especialmente con vista del artículo 7 del Código Civil que provee:

"El tribunal que rehuse fallar a pretexto de silencio, obscuridad o insuficiencia de la ley, o por cualquier otro motivo, incurrirá en responsabilidad.

"Cuando no haya ley aplicable al caso, el tribunal resolverá conforme a equidad, que quiere decir que se tendrá en cuenta la razón natural de acuerdo con los principios generales del derecho, y los usos y costumbres aceptados y establecidos."

■ Los apelantes impugnan la insolvencia del banco, mas su contrademanda no está dirigida contra el banco mismo, sino contra el síndico, y éste está sujeto a los principios ordinarios de equidad, y no puede preferir un acreedor directa o indirectamente. Ante los ojos de la ley una corporación se convierte permanente o temporalmente en *functus officio* al nombrársele un síndico y las reclamaciones quedan determinadas a partir de esa fecha. La idea tanto de la legislación como de las cortes es administrar el activo imparcialmente. Si la corporación no es insolvente y el banco reanuda sus negocios no habrá duda alguna de que los apelantes estarán en posición de recobrar el importe total de sus reclamaciones.

■ Los apelantes también tratan de probar que sus créditos fueron adquiridos antes de la fecha de la sindicatura. La prueba a este respecto es más o menos como sigue: En apoyo de su contrademanda a base de una compensación los demandados presentaron varios documentos, redactados y suscritos ante un notario público. Uno de ellos contenía una cesión a Jaime Ballester, fechada junio 1, 1931, mas se hace constar que la cesión del crédito había sido realmente efectuada el 26 de julio de 1930. Otro documento fué redactado en forma similar y estaba fechado octubre 13, 1931, y también

hace constar que la cesión a José D. Rodríguez fué realmente hecha el 26 de julio de 1930. Un tercer documento de similar naturaleza fué presentado en favor de José D. Rodríguez, fechado octubre 2, 1930.

El síndico presentó en favor del banco demandante, cartas de cada uno de los supuestos cedentes escritas en respuesta a cartas del síndico, que en general afirmaban que tenían ciertas sumas de dinero en depósito en el banco y que tenían las libretas de banco en su poder. Estas cartas estaban fechadas agosto 4, 9 y 16 de 1930, es decir, varios días después de haberse nombrado el síndico del banco, y la corte tenía derecho a creer que los supuestos traspasos tuvieron lugar con posterioridad a dicha designación.

*Debe confirmarse la sentencia apelada.*

### EN MOCION DE RECONSIDERACION
#### Mayo 27, 1936

El Juez Asociado Señor Wolf, emitió la opinión del tribunal.

Los apelantes no atacan seriamente las conclusiones generales a que hemos llegado. Ellos alegaban el beneficio de una compensación debido a la cesión de ciertas reclamaciones contra el Banco presentadas al síndico de éste. Resolvimos que toda vez que la corte había llegado a la conclusión de que estas cesiones fueron efectuadas en fecha posterior a la sindicatura, las mismas no podían ser compensadas en detrimento de otros acreedores.

También hicimos referencia a ciertas cartas a que la corte inferior aludió, que tendían a demostrar que algunas de las reclamaciones fueron cedidas en fecha posterior a la sindicatura. Los apelantes insisten que con respecto a dos de las reclamaciones no existen cartas de clase alguna.

La conclusión de la corte inferior no se basó necesariamente en la existencia de estas cartas. Es cierto que las varias escrituras en que se cedían las reclamaciones o las varias declaraciones juradas, pretendían retrotraerse a un

período anterior a la designación del síndico. La corte no confió en absoluto en estas escrituras para fijar las fechas. Incumbía a los demandados y no al síndico demostrar la fecha exacta de las cesiones y ellos dejaron de hacer esto. El probar tal fecha exacta era un deber de los demandados y apelantes y la corte inferior y este Tribunal estuvieron justificados al no llegar a la conclusión de que tales reclamaciones fueron traspasadas antes de la sindicatura. Las cartas constituían prueba circunstancial tendente a demostrar que no siendo ciertas en varios casos las cesiones notariales, las mismas no demostraban la fecha exacta de ninguna de las cesiones.

*Debe declararse sin lugar la moción de reconsideración.*

Los Jueces Asociados Señores Córdova Dávila y Travieso no intervinieron.